[Civ. No. 67912. Second Dist., Div. Three. Dec. 15, 1983.]

NEIL NORMAN, LTD., Plaintiff and Appellant, v.
WILLIAM KASPER & COMPANY, INC., Defendant and Appellant.

944

COUNSEL

Grueskin & Bunnage, M. Alan Bunnage and Clinton T. Bailey for Plaintiff and Appellant.

Currer & Longoria, William J. Currer, Jr., and Arthur G. Longoria for Defendant and Appellant.

**OPINION**

**KLEIN, P. J.**—Plaintiff, appellant and cross-respondent Neil Norman, Ltd. (Norman) appeals from a judgment following a trial in which the trial court found Norman's claim for breach of contract against William Kasper & Company, Inc. (Kasper) was precluded on the basis of res judicata or retraxit. Kasper appeals a post-judgment decision on a motion to tax costs in which the trial court denied attorney's fees.

We conclude given the factual findings presented, that the lower court erred in finding Norman's claim precluded under the doctrines of retraxit and res judicata in that there was failure to find on material issues. We therefore reverse the judgment and remand for further proceedings. We affirm the denial to Kasper of attorney's fees.

PROCEDURAL AND FACTUAL BACKGROUND[1]

The underlying basis of the dispute was a contract for the sale of a large number of acrylic and wool sweaters to be manufactured by Kasper and

---

[1] The undisputed facts were obtained from the parties' papers in the trial below, the settlement agreement, and the express findings of the lower court. Unresolved factual allegations have been gleaned from the pleadings in the series of lawsuits between the parties, and their appellate briefs.

delivered to Norman. The initial contract ordered 10,000 acrylic sweaters and 7,800 wool sweaters for a total price of $111,200. Size and quality were specified as per samples, and shipment was to be "received" at Los Angeles International Airport no later than October 15, 1976. Payment was to be by letter of credit.

According to Norman's pleading in the first action filed October 20, 1976, (LASC C 177 682), in August 1976 Norman notified Kasper that the wool sweater samples were not in conformity. Norman also alleged therein an unsuccessful attempt to adjust the letter of credit to $46,440, to eliminate the payment for the wool sweaters. Neither the wool nor the acrylic sweaters arrived by the specified date of October 15.

On October 25, Norman and Kasper made a joint inspection of the wool sweaters at the airport, and a cursory inspection of the acrylic sweaters. The result of this meeting was a settlement agreement whereby Kasper agreed to repurchase the defective wool sweaters for $60,000 plus interest (approximately the original price of the wool sweaters).

Among other items, the agreement contained a release clause with respect to "claims arising out of or connected with the subject matter of . . . action number C 177 682," a provision for attorney's fees for a party required to file a legal action to enforce collection, and an agreement by Norman that it would cause action C 177 682 to be dismissed with prejudice upon the execution of the settlement agreement. The dismissal with prejudice was filed October 29, 1976.

Norman then discovered that the acrylic sweaters, delivered to his warehouse apparently that same day, October 29, were also defective.

Thereafter, a dispute arose over Kasper's payment under the terms of the settlement agreement, and on March 18, 1977, Norman filed a second suit on the agreement to enforce the terms of the settlement agreement which suit was also subsequently dismissed with prejudice.[2] (LASC C 193 579.)

On April 14, 1977, Norman filed the third suit presently before us (LASC C 196 349) to recover for the defective acrylic sweaters, claiming breach of the same contract, express warranty, and implied warranty of merchantability. It was this action that the trial court found to be precluded by the

---

[2]While the trial court's notice of intended decision and findings of fact did not discuss the resolution of this second suit, Kasper concedes that it failed to pay the $60,000 within the time specified in the agreement, and that the second action was brought by Norman to collect this amount. According to Kasper, the funds were subsequently paid and a dismissal with prejudice as to this second action was entered April 22, 1977.

dismissal with prejudice of Los Angeles Superior Court No. C 177 682, the first lawsuit. The trial court awarded Kasper costs, but disallowed attorney's fees.

Both parties appeal, Norman on the retraxit/res judicata finding, and Kasper on the failure to award attorney's fees.

## CONTENTIONS

Norman contends that it is not precluded from suing on the same contract for the defective acrylic sweaters by the dismissal with prejudice of the original suit because the first action was not on the entire contract. It also contends that the claim for defective acrylic sweaters could not have been litigated during the pendency of the first suit, and that therefore it is not precluded under the doctrine of res judicata.

On Kasper's appeal from the denial of attorney's fees, it claims that the trial court's decision was based in part on the terms of the settlement agreement, that it was forced into court to claim its rights under that agreement, and therefore was entitled to attorney's fees pursuant to the terms thereof.

## DISCUSSION

■ 1. *The issues in the third suit were not the same as those in the first action so as to set up the defense of res judicata or retraxit.*

(a) *There was no identity of issues.*

The issues in the first lawsuit concerned the late delivery of both lots of sweaters and defects in the wool sweaters.[3]

---

[3]The allegations of the original lawsuit (LASC C 177 682) which appear to have formed the basis of the trial court's ruling are the following: "12. Kasper has breached its contract for the sale of personal property with Norman in that said sweaters were to be received by Norman on or before October 15, 1976, in time to reach the trade shows in New York, whereas said sweaters have yet to be received by Norman. [¶] 13. Kasper has further breached said contract by submitting documents to the defendant, The Bank of California, and demanding full payment in the amount of $111,200.00, including a demand for payment for wool sweaters which are not in conformity with the contract between Kasper and Norman. [¶] 15. By virtue of the breaches of contract for the sale of personal goods as hereinabove set forth, Norman has been damaged in the liquidated sum of $111,200.00, which sum represents a draft to be drawn under the Irrevocable Letter of Credit, which defendant, The Bank of California, intends to pay. Plaintiff Norman has further been damaged in an unliquidated sum equal to lost profits, commissions, advertising and other incidental and consequential damages according to proof at the time of trial. Plaintiff will seek leave of court to amend its complaint herein, to assert the exact amount of such unliquidated damages when such sum is ascertained."

■ A cause of action is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593], citing *Peiser* v. *Mettler* (1958) 50 Cal.2d 594, 605 [328 P.2d 953].) The cases cited by Kasper in this regard, *Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214 [107 Cal.Rptr. 270]; *Ghiringhelli* v. *Riboni* (1950) 95 Cal.App.2d 503 [213 P.2d 17]; *Sutphin* v. *Speik* (1940) 15 Cal.2d 195 [99 P.2d 652, 101 P.2d 497], are inapposite.

In *Kronkright,* the factual allegations in both the earlier and later complaints were the same; the only difference was the remedy sought. (*Kronkright* v. *Gardner, supra,* 31 Cal.App.3d at p. 216.) In *Sutphin,* the preclusion occurred because the issue in question *could* have been litigated in the prior action. (*Sutphin* v. *Speik, supra,* 15 Cal.2d at p. 202.)

■ In the instant case, the original suit was filed on October 20, 1976, based on the knowledge that the shipments of sweaters were late and that the *wool* sweaters were defective. Norman could not have known of the defects in the shipped acrylic sweaters at the time of the first filing because they did not arrive in the country until October 25.

The trial court also found that Norman did not know of the defects until after the entry of the dismissal with prejudice. ■ "Under well settled law, the doctrine of res judicata does not apply where there are changed conditions and new facts which were not in existence at the time of the prior judgment, and upon which such judgment was based." (*Starr* v. *City and County of San Francisco* (1977) 72 Cal.App.3d 164, 178-179 [140 Cal.Rptr. 73].)

(b) *The trial court found that there was no acceptance of the acrylic sweaters before the dismissal was filed.*

■ The trial court's factual finding was that there was no acceptance by Norman of the defective acrylic sweaters prior to the entry of the dismissal with prejudice.

Implicit in the finding is that Norman had not yet had a reasonable opportunity to inspect the acrylic sweaters prior to the entry of the dismissal with prejudice. (See Cal. U. Com. Code, § 2606.) California Uniform Commercial Code section 2606, which defines "acceptance," provides in part that "[a]cceptance of goods occurs when the buyer [¶] (a) *After a reasonable opportunity to inspect the goods* signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or [¶] (b) Fails to make an effective rejection . . . , but *such*

*acceptance does not occur until the buyer has had a reasonable opportunity to inspect them;* or [¶] (c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." (Italics added.)

Because of the trial court's implicit finding, it would appear that Norman was not obligated to be aware of the defects in the acrylic sweaters during the brief pendency of the first lawsuit. This position is reinforced by the trial court's reference to Norman's failure to withdraw the dismissal *after* discovery of the defects. It did not find that Norman should have introduced the issue of the defective acrylic sweaters *prior* to the dismissal.

We are aware that Norman by its negligence could not withhold the issue from the first lawsuit and then litigate it at some later point. (*Kronkright* v. *Gardner, supra,* 31 Cal.App.3d at p. 217, citing *Sutphin* v. *Speik, supra,* 15 Cal.2d at p. 202.) However, this was not the case based on the factual findings before us.

(c) *The dismissal with prejudice does not constitute a bar to the instant case.*

◾ The dismissal with prejudice of the first action by itself, cannot constitute a bar to the subsequent lawsuit under the doctrine of "retraxit." (See *Datta* v. *Staab* (1959) 173 Cal.App.2d 613, 621 [343 P.2d 977]; *Wouldridge* v. *Burns* (1968) 265 Cal.App.2d 82, 85 [71 Cal.Rptr. 394].) Norman's claim and cause of action in the instant case are different from the subject matter of the original complaint and the issues resolved in the settlement agreement.

The dismissal with prejudice was entered pursuant to a settlement agreement in which the parties specifically discussed the issues to be settled. While the trial court in its notice of intended decision made factual findings in Norman's favor with respect to the intent of the settlement agreement, it made no factual finding on this issue in its findings of fact and conclusions of law.[4]

A finding on the scope of the settlement agreement was material to the determination of the issue of retraxit. The matter having been raised by the

---

[4]Paragraphs 9 and 10 of the trial court's findings and conclusions read as follows: "9. That the inspection of the acrylic sweaters at the airport by Mr. Neil Norman and Mr. Edward H. Cummings did not constitute an acceptance of the acrylic sweaters in their then condition. [¶] 10. That the Settlement Agreement (plaintiff's exhibit 6) entered into between the parties did *not* constitute an acceptance of the acrylic sweaters by plaintiff Neil Norman, Ltd.; that the acrylic sweaters were defective and that such defects did not become apparent or known until after the execution of the Settlement Agreement and subsequent entering of a voluntary dismissal with prejudice of the first action."

parties at trial, a failure to make a finding is reversible error. (*U. S. Industries, Inc.* v. *Vadnais* (1969) 270 Cal.App.2d 520, 532 [76 Cal.Rptr. 44].)

*2. The trial court's conclusions of law were fatally inconsistent with its factual findings.*

The trial court in its findings of fact and conclusions of law made no findings as to the scope of the settlement agreement, but indicated that the document was not an "acceptance" of the defective acrylic sweaters. It found that Norman did not know of the defective nature of the acrylic sweaters at the time the dismissal with prejudice was entered. In spite of this finding, the trial court concluded that the dismissal, entered pursuant to the settlement agreement, barred Norman from the subsequent suit over the defective acrylic sweaters. Such a conclusion is inconsistent with the factual findings as they now exist.

*3. Norman was prejudiced by the trial court's inherently inconsistent rulings, which precluded a subsequent action on the same contract.*

On the facts of this case, where Norman has fully performed by virtue of its payments by irrevocable letter of credit, and has compromised its right to sue for breach of the entire contract by allowing Kasper to perform the remainder of the contract, we cannot say that it would be barred from maintaining a suit as to the defective acrylic sweaters because the first suit was brought "on the entire contract." The rule against maintaining more than one action on an "entire" contract is a part of the general rule against impermissible splitting of a single cause of action.

"The truth is that we have to know whether it would be vexatious and unjust to bring two actions before we can tell whether a 'cause of action' is being 'split.'" (4 Corbin on Contracts, § 955, p. 835.) Norman here did not "maintain" more than one action on the same contract. Rather, it brought suit at the time of the first breach, then dismissed it pursuant to a compromise settlement (consideration for which was the price of the wool sweaters), allowing Kasper to continue performance under a remaining portion of the contract. (See *Wilson* v. *Gregory* (1905) 2 Cal.App. 312, 314 [84 P. 356].) Norman should not be penalized solely for its election to treat the late delivery and defective wool sweaters as only a partial breach, a course to which it was entitled as an aggrieved buyer. (Cal. U. Com. Code, § 2307.)

The trial court's inherently inconsistent ruling cannot support its denial of a subsequent action by Norman on the contract for a breach thereof occurring after the first action. (*Wilson* v. *Gregory, supra,* at p. 314.) Un-

der the circumstances at the time of the second action for breach of contract, Norman was in possession of some 10,000 defective acrylic sweaters for which it paid the full contract price of $46,440. If Norman is without this remedy, Kasper has breached the contract and is unjustly enriched as a consequence. At oral argument, Kasper asserted that Norman's remedy was limited to an action to set aside the dismissal in the first lawsuit, and to seek a modification of the settlement agreement. We do not agree that Norman's remedy is thus proscribed.

For these reasons, there was prejudicial error constituting grounds for reversal. (Code Civ. Proc., § 475.) There are remaining issues to be tried in this lawsuit.

4. *Attorney's fees were properly denied.*

The settlement agreement to the first lawsuit is the only contract in this litigation that provides for an award of attorney's fees to the prevailing party. The contract sued upon here however, is the sales contract, which contained no fee provisions.

The fact that Kasper attempted to *defend* on the basis of the settlement agreement is thus immaterial.

In any event, Kasper is no longer the prevailing party by virtue of our reversal of the trial court's ruling on the res judicata issue.

### DISPOSITION

The judgment of the trial court with respect to the preclusion of Norman's suit is reversed and remanded for further proceedings. The judgment denying Kasper's award of attorney's fees is affirmed.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied January 12, 1984, and the petition of defendant and appellant for a hearing by the Supreme Court was denied February 15, 1984.